UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JOHN MICHAEL BARNES,<br><br>                      Plaintiff,<br><br>        v.<br><br>STEPHEN BARTLETT; DEPUTY<br>MILLER; LT. SHEPARD; TRAVIS<br>RUBY; and JAKOB GOULD,<br><br>                      Defendants. | Case No. 1:21-cv-00373-DCN<br><br>**INITIAL REVIEW ORDER BY<br>SCREENING JUDGE** |

The Clerk of Court conditionally filed Plaintiff John Michael Barnes's Complaint as a result of Plaintiff's status as an inmate and in forma pauperis request. The Court now reviews the Complaint to determine whether it or any of the claims contained therein should be summarily dismissed under 28 U.S.C. §§ 1915 and 1915A. Having reviewed the record, and otherwise being fully informed, the Court enters the following Order.

## 1.     Pleading Standards and Screening Requirement

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under modern pleading standards, Rule 8 requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The *Iqbal/Twombly* "facial plausibility" standard is met when a complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "[D]etailed factual allegations" are not required, but a plaintiff must offer "more than ... unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Id.* (internal quotation marks omitted).

If the facts pleaded are "merely consistent with a defendant's liability," or if there is an "obvious alternative explanation" that would not result in liability, the complaint has not stated a claim for relief that is plausible on its face. *Id.* at 678, 682 (internal quotation marks omitted). Bare allegations that amount to a mere restatement of the elements of a cause of action, without adequate factual support, are not enough.

The Prison Litigation Reform Act ("PLRA")[1] requires that the Court review complaints filed by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity, as well as complaints filed in forma pauperis, to determine whether summary dismissal is appropriate. 28 U.S.C. §§ 1915 & 1915A. The Court must dismiss any claims that do not have adequate factual support or are frivolous or malicious. 28 U.S.C. §§ 1915(e)(2) & 1915A.

The Court also must dismiss claims that fail to state a claim upon which relief may be granted or that seek monetary relief from a defendant who is immune from such relief. *Id*. These last two categories—together with claims that fall outside a federal court's narrow grant of jurisdiction—encompass those claims that might, or might not, have factual support but nevertheless are barred by a well-established legal rule.

The Court liberally construes the pleadings to determine whether a case should be

---

[1] Pub. L. No. 104-134, 110 Stat. 1321, *as amended*, 42 U.S.C. § 1997e, *et seq.*

dismissed for a failure to plead sufficient facts to support a cognizable legal theory or for the absence of a cognizable legal theory. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable factual *and* legal basis. *See Jackson v. Arizona*, 885 F.2d 639, 640 (9th Cir. 1989) (discussing Federal Rule of Civil Procedure 12(b)(6)), *superseded by statute on other grounds as stated in Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000).[2]

## 2.    Factual Allegations

Plaintiff is a prisoner in the custody of the Idaho Department of Correction, currently incarcerated at the Idaho State Correctional Center. The events giving rise to Plaintiff's claims occurred when Plaintiff was an inmate in the Ada County Jail. Plaintiff alleges that Ada County Sheriff Stephen Bartlett and several jail deputies violated Plaintiff's constitutional rights by failing to adequately protect him from contracting COVID-19.

Plaintiff states that, on various occasions between July and September 2020, he asked Defendant Deputies Miller, Sheperd, Ruby, and Goold for "a mask, hand sanitizer, [and] gloves to be used to clean [Plaintiff's] living area." *Compl.*, Dkt. 3, at 3. These Defendants denied Plaintiff's requests, informing Plaintiff that it was jail policy not to provide these items to inmates. *Id*. at 2.

Plaintiff twice tested negative for COVID-19 but then was moved "into an area with

---

[2] Rule 12(b)(6) authority to dismiss claims as explained in *Jackson* was expanded by the PLRA, giving courts power to dismiss deficient claims sua sponte, either before or after opportunity to amend. *See Lopez*, 203 F.3d at 1130.

other inmates" who had already tested positive. *Id*. at 2–5. According to the Complaint, jail staff also permitted inmates who had tested positive for COVID-19 to serve food to other inmates.[3] *Id*. at 2. Plaintiff contracted COVID-19 at the Ada County Jail. *Id*. at 3–6.

Plaintiff asserts his claims under 42 U.S.C. § 1983 and the Idaho constitution. He seeks damages and injunctive relief.

**3.    Discussion**

   ***A.    Section 1983 Claims***

Plaintiff brings claims under 42 U.S.C. § 1983, the civil rights statute. To state a plausible civil rights claim, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). To be liable under § 1983, "the defendant must possess a purposeful, a knowing, or possibly a reckless state of mind." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2472 (2015). Negligence is not actionable under § 1983, because a negligent act by a public official is not an abuse of governmental power but merely a "failure to measure up to the conduct of a reasonable person." *Daniels v. Williams*, 474 U.S. 327, 332 (1986).

Jail and prison officials generally are not liable for damages in their individual capacities under § 1983 unless they personally participated in the alleged constitutional

---

[3] Some of these allegations appear contrary to Plaintiff's statements during the jail grievance process, in which he recognized that "inmates that tested positive were taken off the unit, not allowed to continue serving or touching our food." *Grievance Process Exhibits*, Dkt. 3-1 at 9. Although, at this early stage of proceedings, the Court takes the allegations in the Complaint as true—and will thus ignore the contrary allegations in the exhibits—Plaintiff should be aware that Rule 11 of the Federal Rules of Civil Procedure provides for sanctions against a party who makes false allegations in "a pleading, written motion, or other paper" submitted to the Court.

violations. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Iqbal*, 556 U.S. at 677 ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). Section 1983 does not allow for recovery against an employer or principal simply because an employee or agent committed misconduct. *Taylor*, 880 F.2d at 1045.

However, "[a] defendant may be held liable as a supervisor under § 1983 'if there exists ... a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). A plaintiff can establish this causal connection by alleging that a defendant (1) set in motion a series of acts by others that violated the Constitution, or knowingly refused to terminate a series of such acts, which the supervisor "knew or reasonably should have known would cause others to inflict a constitutional injury"; (2) knowingly failed to act or acted improperly "in the training, supervision, or control of his subordinates"; (3) acquiesced in the constitutional deprivation; or (4) engaged in "conduct that showed a reckless or callous indifference to the rights of others." *Id*. at 1205–09 (internal quotation marks omitted).

A claim that a supervisor or training official failed to adequately train subordinates ordinarily requires that, "in light of the duties assigned to specific officers or employees[,] the need for more or different training [was] so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the [supervisor or training official] can reasonably be said to have been deliberately indifferent to the need." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989). That is, to maintain a failure-to-train claim, a plaintiff

must allege facts showing a "pattern of violations" that amounts to deliberate indifference. *Connick v. Thompson*, 563 U.S. 51, 72 (2011). Likewise, "a failure to supervise that is sufficiently inadequate may amount to deliberate indifference" that supports a § 1983 claim, but there generally must be a pattern of violations sufficient to render the need for further supervision obvious. *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (internal quotation marks omitted). That is, if a supervisory or training official had "knowledge of the unconstitutional conditions" through such a pattern of violations— including knowledge of the "culpable actions of his subordinates"—yet failed to act to remedy those conditions, that official can be said to have acquiesced "in the unconstitutional conduct of his subordinates" such that a causal connection between the supervisor and the constitutional violation is plausible. *Starr*, 652 F.3d at 1208.

A plaintiff cannot simply restate these standards of law in a complaint. Instead, a plaintiff must provide specific facts supporting the elements of each claim and must allege facts showing a causal link between each defendant and Plaintiff's injury or damage. Alleging "the mere possibility of misconduct" is not enough. *Iqbal*, 556 U.S. at 679.

   i.  <u>Standards of Law Governing Conditions-of-Confinement Claims</u>

Though Plaintiff states that he is bringing his § 1983 claims under the Eighth Amendment, that amendment applies only if Plaintiff was a convicted inmate when the claims arose. If, instead, Plaintiff was a pretrial detainee, his constitutional claims would be considered under the Fourteenth Amendment's due process clause. Plaintiff's status at the time his claims arose is unclear. Therefore, the Court will analyze Plaintiff's § 1983 claims under both provisions.

INITIAL REVIEW ORDER BY SCREENING JUDGE - 6

With respect to pretrial detainees, jail conditions violate the Constitution if those conditions amount to punishment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Detainees' conditions-of-confinement claims are analyzed using a standard of "objective deliberate indifference." *Gordon v. County of Orange*, 888 F.3d 1118, 1124 (9th Cir. 2018). Under that standard, a detainee must establish the following elements:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Id.* at 1125. The application of this standard "will necessarily turn on the facts and circumstances of each particular case." *Id*. (internal quotation marks and alteration omitted).

Although the Court uses an objective standard in evaluating conditions-of-confinement claims of pretrial detainees, this standard must not be confused with the objective standard used for evaluating claims of negligence under state law. This is because negligence—the "mere lack of due care" by a governmental official—"does not deprive an individual of life, liberty, or property under the Fourteenth Amendment." *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc); *see also Daniels v. Williams*, 474 U.S. 327, 332 (1986) (stating that negligence and ordinary negligence are not actionable under § 1983, because such actions are not an abuse of governmental power but

merely a "failure to measure up to the conduct of a reasonable person"). Therefore, a pretrial detainee complaining of unconstitutional conditions of detention must "prove more than negligence but less than subjective intent—something akin to reckless disregard." *Castro*, 833 F.3d at 1071.

As for convicted inmates, the Eighth Amendment to the United States Constitution prohibits cruel and unusual punishment and guarantees the right to minimally adequate conditions of confinement. "[T]he Constitution does not mandate comfortable prisons, and prisons … which house persons convicted of serious crimes[] cannot be free of discomfort." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). However, though prison conditions may be restrictive—even harsh—without violating the Eighth Amendment, prison officials are required to provide prisoners with adequate food, clothing, shelter, sanitation, medical care, and personal safety. *Id.* at 347; *Hoptowit v. Ray,* 682 F.2d 1237, 1246 (9th Cir. 1982), *abrogated on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995). In considering whether a condition of confinement is cruel and unusual, a court must "determine whether that condition is compatible with the evolving standards of decency that mark the progress of a maturing society." *Wright v. Rushen*, 642 F.2d 1129, 1133 (9th Cir. 1981) (internal quotation marks omitted).

To state a claim under the Eighth Amendment, a prisoner must show that he is (or was) "incarcerated under conditions posing a substantial risk of serious harm," or that he has been deprived of "the minimal civilized measure of life's necessities" as a result of the defendant's actions. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). An Eighth Amendment claim requires the plaintiff to satisfy both (1) an

objective standard, "that the deprivation was serious enough to constitute cruel and unusual punishment, and (2) a subjective standard, that the defendant acted with "deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (en banc).

To rise to the level of an Eighth Amendment violation, the deprivation alleged must be objectively sufficiently harmful, *Farmer*, 511 U.S. at 834, or, in other words, sufficiently "grave" or "serious," *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). As the United States Supreme Court has explained:

> Not every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny, however. After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment. To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety.

*Whitley v. Albers*, 475 U.S. 312, 319 (1986) (internal quotation marks, citation, and alteration omitted).

With respect to the subjective prong of an Eighth Amendment claim, a defendant acts with deliberate indifference only if the defendant (1) knew of the risk to the prisoner's health or safety, and (2) deliberately disregarded that risk. *Farmer*, 511 U.S. at 837. That is, a defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. "If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." *Gibson v. Cty. of Washoe*,

290 F.3d 1175, 1188 (9th Cir. 2002), *overruled on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016). Moreover, even prison officials or medical providers who *did* know of a substantial risk to an inmate's health or safety will not be liable under § 1983 "if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844.

ii.        Plaintiff May Proceed on Some of the Claims in the Complaint

Plaintiff's Complaint, liberally construed, appears to state some colorable claims for unconstitutional conditions of confinement, whether the claims are analyzed under the Due Process Clause or the Eighth Amendment.

Plaintiff may proceed against Defendants Miller, Sheperd, Ruby, and Goold on his claims involving these Defendants' refusal to provide Plaintiff with items that could have helped limit the spread of COVID-19.[4] However, the Complaint does not plausibly suggest that these four Defendants had any decision-making authority as to (1) transferring Plaintiff to be housed with inmates who had tested positive for COVID-19, or (2) permitting inmates who had tested positive to serve food. Therefore, these claims are deficient as to Defendants Miller, Sheperd, Ruby, and Goold for failure to allege causation.

As against Defendant Sheriff Bartlett, the Complaint states plausible conditions-of-confinement claims with respect to (1) the policy prohibiting inmates from using masks, gloves, and cleaning supplies; (1) transferring Plaintiff into a COVID-positive housing

---

[4] There may be legitimate reasons why a prison official might decide to prohibit inmates from possessing chemical products and from wearing masks, such as the need to keep potential chemicals out of inmates' hands or "the need to identify inmates … quickly for purposes of safety and security." *Kesling v. Tewalt*, 476 F. Supp. 3d 1077, 1088 n.1 (D. Idaho 2020). The Court expresses no opinion on such issues at this time.

unit; and (3) allowing inmates who tested positive to serve food to other inmates. The Complaint raises a plausible inference that Bartlett, as the Sheriff of Ada County and the head of the jail, made the decisions as to all three bases for Plaintiff's claims.

The Court notes that the Complaint in this case is unlike that in *Kesling v. Tewalt*, 476 F. Supp. 3d 1077 (D. Idaho 2020). As explained in that case, during the early months of the pandemic prison officials had not required all individuals to wear masks. The prison also had a policy of returning presumptively positive inmates—those who had had contact with a COVID-positive person—to be housed in their same cell, with their same cellmate, while awaiting their COVID-19 test results. The Court held that the complaint failed to state a plausible § 1983 claim:

> That prison officials did not require face masks for the first few months of the pandemic does not establish deliberate indifference. What we know about COVID-19 and the spread of the novel coronavirus is constantly changing, as new information is released by medical researchers, agencies, and other authorities. At first, it was unclear whether cloth face masks would be particularly effective in curbing the spread of the virus. Of course, we now know that such masks do help reduce the risk of transmission. But it was not unreasonable for prison officials to refrain from requiring face masks in the early months of the pandemic, particularly when access to such masks was limited.
>
> The policy of returning presumptively positive inmates to their cells while awaiting test results, where they could potentially expose their cellmates, also appears to be a reasonable response to the current pandemic. Until such inmates receive their test results, it is unknown whether they are infected. The prison is a finite space. It would be impossible to isolate every inmate who is *potentially* infected—the prison does not have enough space to house each such inmate in a single cell. Plaintiff does not allege that prison officials did not isolate his cellmate after a positive COVID-19 test. Additionally, a

INITIAL REVIEW ORDER BY SCREENING JUDGE - 11

cellmate who is presumptively positive and waiting on test results, if infected, has already exposed his cellmate to the virus. Therefore, it was a reasonable response to the risk of coronavirus to quarantine both inmates together while test results were pending, even if distancing between cellmates was not possible.

IDOC and ISCC's response to the current pandemic—at least as described in the Amended Complaint—has, to this point, been reasonable. Prison officials developed a team to deal with COVID-19 as it affects the prison population. That team has created and implemented policies in an effort to protect the health and safety of inmates during this crisis. They have undertaken reasonable measures, such as temperature checks, questionnaires, and testing of potentially positive inmates, which show that officials have indeed been taking the risk seriously and considering how best to respond. IDOC is not required to have a perfect response to the pandemic—only one that is free from deliberate indifference. Therefore, the Amended Complaint does not give rise to a reasonable inference that any Defendant has violated the Eighth Amendment with respect [to] COVID-19.

*Id.* at 1087–88 (footnote omitted). In *Kesling*, the plaintiff's own allegations "reveal[ed] that prison officials responded reasonably to the serious risk posed by the coronavirus and, therefore, were not deliberately indifferent in violation of the Eighth Amendment." *Id.* at 1087.

In contrast, in this case Plaintiff alleges that inmates were not isolated and were allowed to serve food even *after* jail staff learned they had tested positive for COVID-19. Additionally, at the time Plaintiff's claims arose, it was well-known that frequent cleaning is an effective way to reduce the spread COVID-19. Thus, at this early stage of the proceedings, the Court concludes that the Complaint states some plausible conditions-of-confinement claims for monetary damages.

INITIAL REVIEW ORDER BY SCREENING JUDGE - 12

However, Plaintiff may not proceed on his claims for injunctive relief because he is no longer confined in the Ada County Jail. *See Alvarez v. Hill*, 667 F.3d 1061, 1064 (9th Cir. 2012) (holding that prisoner's injunctive relief claims were moot after prisoner's release because "the released inmate [wa]s no longer subject to the prison conditions or policies he challenge[d]"); *Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir. 1991) ("Johnson was transferred to a federal correctional facility in Washington. Because he has demonstrated no reasonable expectation of returning to [his previous correctional facility], his claims for injunctive relief relating to [that facility's] policies are moot."). Accordingly, these claims must be dismissed as moot.

## B.  *Idaho State Constitutional Claims*

In addition to § 1983 claims, Plaintiff asserts claims under the Idaho State Constitution. The Idaho constitutional provisions that guarantee due process and prohibit cruel and unusual punishment are coextensive with their federal counterparts. *See State v. Newman*, 696 P.2d 856, 862 n.6 (Idaho 1985), *modified on other grounds by State v. Bitt*, 798 P.2d 43 (1990); *State v. Gilman*, 673 P.2d 1085, 1087 (Idaho Ct. App. 1983); *Williams v. State*, 283 P.3d 127, 139 (Idaho Ct. App. 2012). Therefore, in addition to the federal claims upon which Plaintiff may proceed, Plaintiff may proceed on the corresponding state law claims.

The Court will exercise supplemental jurisdiction over Plaintiff's state constitutional claims for damages. *See* 28 U.S.C. § 1367. Plaintiff's injunctive relief claims under state law must be dismissed for the same reason as those under § 1983: Plaintiff's transfer from the Ada County Jail to state prison renders moot his claims for injunctive

relief.

**4.      Request for Appointment of Counsel**

Plaintiff also seeks appointment of counsel. *Compl*. at 7. Unlike criminal

defendants, prisoners and indigents in civil actions have no constitutional right to counsel

unless their physical liberty is at stake. *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 25

(1981). Whether a court appoints counsel for indigent litigants is within the court's

discretion. *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986).

In civil cases, counsel should be appointed only in "exceptional circumstances." *Id*.

To determine whether exceptional circumstances exist, the court should evaluate two

factors: (1) the likelihood of success on the merits of the case, and (2) the ability of the

plaintiff to articulate the claims pro se considering the complexity of legal issues involved.

*Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991). Neither factor is dispositive, and

both must be evaluated together. *Id*.

Plaintiff's Complaint, liberally construed, appears to state a claim upon which relief

could be granted if the allegations are proven at trial. However, without more than the bare

allegations of the Complaint, the Court does not have a sufficient basis upon which to

assess the merits at this point in the proceedings. The Court also finds that Plaintiff has

articulated the claims sufficiently, and that the legal issues in this matter are not complex.

Based on the foregoing, the Court will deny Plaintiff's request for appointment of counsel.

If it seems appropriate later in this litigation, the Court will reconsider appointing counsel.

A federal court has no authority to require attorneys to represent indigent litigants

in civil cases under 28 U.S.C. § 1915(e)(1) or under the Court's inherent authority. *Mallard*

*v. U.S. Dist. Court for S. Dist. of Iowa*, 490 U.S. 296, 298 (1989) (holding that the appointment of counsel provision in § 1915, formerly found in subsection (d), does not "authorize[] a federal court to require an unwilling attorney to represent an indigent litigant in a civil case"); *Veenstra v. Idaho State Bd. of Corr.*, Case No. 1:15-cv-00270-EJL (D. Idaho May 4, 2017) ("[The Court] does not have inherent authority to compel an attorney to represent Plaintiffs pro bono."). Rather, when a Court "appoints" an attorney, it can do so only if the attorney voluntarily accepts the assignment. *Id.* The Court has no funds to pay for attorneys' fees in civil matters such as this one, and it is often difficult to find attorneys willing to work on a case without payment—especially in prisoner cases, where contact with the client is particularly difficult. For these reasons, Plaintiff should attempt to procure counsel on a contingency or other basis, if possible.

## 5.    Conclusion

Plaintiff may proceed as outlined above. This Order does not guarantee that any of Plaintiff's claims will be successful. Rather, it merely finds that some are plausible— meaning that the claims will not be summarily dismissed at this time but will proceed to the next stage of litigation. This Order is not intended to be a final or a comprehensive analysis of Plaintiff's claims.

Defendants may still file a motion for dismissal or motion for summary judgment if the facts and law support such a motion.[5] Because (1) prisoner filings must be afforded a

---

[5] The standards for a motion to dismiss for failure to state a claim under Rule 12(b)(6) are the same standards that the Court has used to screen the Complaint under §§ 1915 and 1915A. Therefore, motions to dismiss for failure to state a claim are disfavored in cases subject to §§ 1915 and 1915A and may be filed only in extraordinary circumstances.

liberal construction, (2) governmental officials often possess the evidence prisoners need to support their claims, and (3) many defenses are supported by governmental records, an early motion for summary judgment—rather than a motion to dismiss—is often a more appropriate vehicle for asserting procedural defenses such as non-exhaustion or entitlement to qualified immunity.

## ORDER

### IT IS ORDERED:

1.   Plaintiff's request for appointment of counsel (contained in the Complaint) is DENIED.

2.   Plaintiff may proceed, to the extent set forth above, on the Complaint's Eighth or Fourteenth Amendment claims for monetary damages, as well as corresponding state law claims, against Defendants Bartlett, Miller, Sheperd, Ruby, and Goold. All other claims are DISMISSED. If Plaintiff later discovers facts sufficient to support a claim that has been dismissed, Plaintiff may move to amend the complaint to assert such claims.[6]

3.   Defendants Bartlett, Miller, Sheperd, Ruby, and Goold will be allowed to waive service of summons by executing, or having their counsel execute, the

---

[6] Any amended complaint must contain all of Plaintiff's allegations in a single pleading and cannot rely upon or incorporate by reference prior pleadings. Dist. Idaho Loc. Civ. R. 15.1 ("Any amendment to a pleading, whether filed as a matter of course or upon a motion to amend, must reproduce the entire pleading as amended. The proposed amended pleading must be submitted at the time of filing a motion to amend."); *see also Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997) ("[An] amended complaint supersedes the original, the latter being treated thereafter as non-existent."), *overruled in part on other grounds by Lacey v. Maricopa County*, 693 F.3d 896, (9th Cir. 2012) (en banc); *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc*., 896 F.2d 1542, 1546 (9th Cir. 1990) (holding that the district court erred by entering judgment against a party named in the initial complaint, but not in the amended complaint).

Waiver of Service of Summons as provided by Fed. R. Civ. P. 4(d) and returning it to the Court within 30 days. If Defendants choose to return the Waiver of Service of Summons, the answer or pre-answer motion will be due in accordance with Rule 12(a)(1)(A)(ii). Accordingly, the Clerk of Court will forward a copy of the Complaint (Dkt. 3), a copy of this Order, and a Waiver of Service of Summons to **Jan M. Bennetts, Ada County Prosecutor, 200 West Front Street, Room 3191, Boise, ID 83702**, on behalf of Defendants.

4. Should any entity determine that the individuals for whom counsel for the entity was served with a waiver are not, in fact, its employees or former employees, or that its attorney will not be appearing for the entity or for particular former employees, it should file a notice within the CM/ECF system, with a copy mailed to Plaintiff, identifying the individuals for whom service will not be waived.

5. If Plaintiff receives a notice from Defendants indicating that service will not be waived for an entity or for certain individuals, Plaintiff will have an additional 90 days from the date of such notice to file a notice of physical service addresses of the remaining Defendants, or claims against them may be dismissed without prejudice without further notice.

6. The parties must follow the deadlines and guidelines in the Standard Disclosure and Discovery Order for Pro Se Prisoner Civil Rights Cases, issued with this Order.

7. Any amended pleadings must be submitted, along with a motion to amend,

INITIAL REVIEW ORDER BY SCREENING JUDGE - 17

within 150 days after entry of this Order.

8.      Dispositive motions must be filed no later than 300 days after entry of this Order.

9.      Each party must ensure that all documents filed with the Court are simultaneously served upon the opposing party (through counsel if the party has counsel) by first-class mail or via the CM/ECF system, pursuant to Federal Rule of Civil Procedure 5. Each party must sign and attach a proper mailing certificate to each document filed with the court, showing the manner of service, date of service, address of service, and name of person upon whom service was made.

10.     The Court will not consider ex parte requests unless a motion may be heard ex parte according to the rules and the motion is clearly identified as requesting an ex parte order, pursuant to Local Rule of Civil Practice before the United States District Court for the District of Idaho 7.2. ("Ex parte" means that a party has provided a document to the court, but that the party did not provide a copy of the document to the other party to the litigation.)

11.     All Court filings requesting relief or requesting that the Court make a ruling or take an action of any kind must be in the form of a pleading or motion, with an appropriate caption designating the name of the pleading or motion, served on all parties to the litigation, pursuant to Federal Rule of Civil Procedure 7, 10 and 11, and Local Rules of Civil

INITIAL REVIEW ORDER BY SCREENING JUDGE - 18

Practice before the United States District Court for the District of Idaho 5.1 and 7.1. The Court will not consider requests made in the form of letters.

12.    No party may have more than three pending motions before the Court at one time, and no party may file a motion on a particular subject matter if that party has another motion on the same subject matter currently pending before the Court. Motions submitted in violation of this Order may be stricken, summarily denied, or returned to the moving party unfiled.

13.    Plaintiff must notify the Court immediately if Plaintiff's address changes. Failure to do so may be cause for dismissal of this case without further notice.

14.    Pursuant to General Order 324, this action is hereby returned to the Clerk of Court for random civil case assignment to a presiding judge, on the proportionate basis previously determined by the District Judges, having given due consideration to the existing caseload.

DATED: January 5, 2022

David C. Nye
Chief U.S. District Court Judge